UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**EVERGREEN PRESBYTERIAN MINISTRIES INC, ET AL**

**CIVIL ACTION NO. 15-cv-2666**

**VERSUS**

**JUDGE ELIZABETH ERNY FOOTE**

**TOWN OF HAUGHTON, ET AL**

**MAGISTRATE JUDGE HORNSBY**

## MEMORANDUM RULING

Before the Court is a Partial Motion To Dismiss filed by the Defendants, the Town of Haughton ("the Town") and its mayor, Carlton Anderson ("Anderson"). [Record Document 9]. The Plaintiffs, Evergreen Presbyterian Ministries, Inc. ("Evergreen"), and Barron Builders of Pineville, Inc. ("Barron Builders"), assert discrimination and retaliation claims against the Defendants under the Fair Housing Amendments Act of 1988 ("FHAA") and the Americans with Disabilities Act of 1990 ("ADA") for their roles in halting the construction of a home for disabled persons in Haughton, Louisiana. The Defendants' motion urges the Court to dismiss the Plaintiffs' discrimination claim as unripe because the Town has not yet made a final decision on whether it will allow the Plaintiffs to build the home. For the reasons stated below, the Court **DENIES in part** and **GRANTS in part** the Defendants' motion. While the Plaintiffs' intentional discrimination claims are ripe, their reasonable accommodation claims are not.

## I.     Background

Evergreen is a nonprofit organization that provides home-based care for disabled persons across the Southeast.  Record Document 1, p. 1.  Evergreen decided to build a home for this purpose in Haughton, Louisiana, and hired Barron Builders as the general contractor to construct the home.  Record Document 1, p. 3.  Barron Builders applied to the Town for a residential building permit on July 23, 2015.  Record Document 1, p. 3; Record Document 11, p. 1.[1]  Seven days later, the town issued the building permit.  Record Document 1, p. 4.

The permit application indicated that Barron Builders sought a residential permit.  Record Document 11, p. 1.  Under the "Project Description" section of the application, Barron Builders simply stated "New Construction – Residential Home."  Record Document 11, p. 1.   On the plans submitted in conjunction with its permit application, "Evergreen Life Services - Flint Drive," appears near the center of the cover page in bold, enlarged print.  Record Document 1-2, p. 2.  Elsewhere on the cover page, under the heading "Applicable Codes & Guidelines," a list includes the bullets "Guidelines for Design & Construction of Health Care Facilities (AIA)" and "Occupancy - Health Care - (NFPA 101)."  Record Document 1-2, p. 2.  The perspective rendering of the home on the cover page depicts an ordinary ranch-style home.  Record Document 1-2, p. 2.  The application and accompanying plans are otherwise unremarkable.

---

[1] Although the discrepancy is irrelevant to the motion before it, the Court notes that while all parties consistently identify July 23, 2015, as the date when Barron Builders applied for the building permit, the permit itself indicates the application date as July 20, 2015.

The neighborhood in which the Plaintiffs proposed to build the home is zoned as R-1, a designation under the Town's Zoning Ordinance ("Ordinance") that limits uses as of right in the neighborhood to one-family dwellings. Record Document 9-1, p. 2; Record Document 9-5, p. 19-20. The Ordinance defines a one-family dwelling as "[a] detached building containing one (1) dwelling unit and used exclusively by one (1) family." Record Document 9-5, p. 12. The Ordinance further defines a dwelling unit as "[o]ne or more rooms in the same structure, connected together and constituting a separate, independent housekeeping unit for permanent residential occupancy and with facilities for sleeping and cooking." Record Document 9-5, p. 12. And the Ordinance defines family as "[o]ne or more persons, including, not more than, four (4) lodgers or boarders, living together as a single housekeeping unit." Record Document 9-5, p. 12. Because a one-family dwelling is a use of right in an R-1 district, applications to build a one-family dwelling in an R-1 district do not require special approval from either the Planning Commission, which is the primary decision-making body regarding land-use issues in Haughton, or the Zoning Board of Appeals ("Board of Appeals"), which can both review whether decisions of the Planning Commission violate the Ordinance and determine in the first instance whether to grant a variance to the Ordinance. Record Document 9-5, pp. 72-74; Record Document 12, p. 3. For any other proposed use of a building in an R-1 district, the Board of Appeals must review the proposal and approve a variance before the Town can issue a building permit. Record Document 9-3, pp. 1-2; Record Document 9-5, pp. 73-74. In addition, a third party, IBTS, apparently reviews all building permit applications on behalf of the Town for building code compliance. Record Document 1-2, p. 15.

Once it obtained the Town's building permit, Barron Builders began construction of the home and proceeded unimpeded until September 8, 2015, when a representative of the Town posted a stop-work order at the construction site stating that the project failed to comply with the Ordinance. Record Document 1, p. 4. According to the Plaintiffs, Anderson issued the stop-work order after receiving multiple complaints from residents who were troubled by the prospect of locating a home for disabled persons in their neighborhood. Record Document 1, p. 4. On September 10, 2015, Anderson wrote a letter to Barron Builders stating the following:

> It has come to my attention that Barron Builders of Pineville, Inc. presented the Town of Haughton with a false permit application for the construction located at 613 Flint Drive located in Cornerstone Subdivision in Haughton, Louisiana. On the application, your entity certified that it was a residential construction when in fact it was commercial residential and should have been submitted as commercial residential. As such, the question of your suitability to continue to do business on this and future projects in the Town of Haughton [sic]. In order to render a final decision, I have directed that a Disqualification Hearing be held at Town Hall on Monday, September 14, 2015, at 10:00 a.m. At that time, you should be prepared to present documents and/or discuss why Barron Builders of Pineville, Inc. should be not disqualified as a contractor within the Town of Haughton. You are invited to attend and participate as you deem necessary.

Record Document 1-2, p. 13. Apparently at the behest of Evergreen's counsel, Anderson cancelled the September 14 disqualification hearing. Record Document 1-2, pp. 15-20. In the ensuing weeks, the Plaintiffs implored the Defendants to rescind the stop-work order, arguing that it violated the FHAA. Id. Although the Defendants allowed Barron Builders to take whatever means necessary to protect the home from weather damage, the Defendants maintained that they would take no further action on the stop-work order until the Plaintiffs amended their permit application to indicate that the building would

have a commercial residential use, thereby triggering its review by the Board of Appeals for a variance. Record Document 1, p. 4; Record Document 9-3, pp. 1-3; Record Document 9-6, p. 1. According to the Defendants, Evergreen utilized this process in 1991 when it sought a permit for another group home in Haughton. Record Document 9-3, p. 3. After conducting an impact study and holding a public hearing, the Town granted the variance and issued a building permit. Record Document 9-3, p. 3. The Plaintiffs declined to amend their permit application and seek a variance from the Board of Appeals. Eventually, on October 23, 2015, Evergreen informed the Defendants that if they did not lift the stop-work order by October 30, 2015, it would file suit. Record Document 1-2, p. 18. Three days later, Anderson wrote Barron Builders indicating that he was rescheduling the disqualification hearing for October 29, 2015. Record Document 1-2, p. 20. At the hearing, Anderson indefinitely disqualified Barron Builders from doing any work in Haughton. Record Document 1-2, p. 22. The Plaintiffs filed this suit soon thereafter, each asserting four federal claims: (1) discrimination under the FHAA, (2) intimidation under the FHAA, (3) discrimination under the ADA, and (4) retaliation under the ADA. Record Document 1. The Defendants now move to dismiss the Plaintiffs' discrimination claims under Rule 12(b)(1), arguing that those claims are not ripe.

II. Standard

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The Court may find a

plausible set of facts to support subject matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrera–Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996). Absent an evidentiary hearing, the Court "must accept all factual allegations in the plaintiff's complaint as true." Id. Because ripeness is a component of subject matter jurisdiction, a court does not have the power to decide claims that are not yet ripe. See Sample v. Morrison, 406 F.3d 310, 312 (5th Cir.2005).

### III. Law & Analysis

#### A. Overview

The Defendants contend that the Plaintiffs' discrimination claims under the FHAA and ADA are not ripe until the Board of Appeals issues a final decision on whether to issue a building permit, which it cannot do until the Plaintiffs apply for a variance. The Plaintiffs contend that their proposed use for the home already complies with the Ordinance. Specifically, the Plaintiffs argue that because the Ordinance defines a family as persons "living together as a single housekeeping unit" and not as persons related by blood or marriage, the disabled persons who will reside at the home qualify as a "family" and the home itself qualifies as a "one-family dwelling" as the Ordinance defines those terms. As a consequence, the Plaintiffs argue that their claims are ripe because the Defendants' requiring them to seek a variance itself constitutes discrimination. The Plaintiffs also argue that given the Defendants' conduct thus far, seeking a variance or appeal would be futile. Although neither party directly addresses it, the distinction between the types of

discrimination claims brought by the Plaintiffs is relevant to their ripeness. Specifically, in the context of allegedly discriminatory zoning actions, claims based on discriminatory intent become ripe sooner than claims based on the failure of a zoning entity to make reasonable accommodations. The Court thus finds that while the Plaintiffs' intentional discrimination claims are ripe, their reasonable accommodation claims are not. The Court also finds that the Plaintiffs have failed to meet their burden of showing that applying for a variance would be futile.

### B. The Plaintiffs' Discrimination Claims

The Plaintiffs have asserted two types of discrimination claims under the FHAA and ADA: (1) discrimination based on intent and (2) discrimination based on the Defendants' failure to make reasonable accommodations. The elements for each type of claim are the same regardless of whether they are brought under the FHAA or ADA. See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48 (2d Cir. 2002).

Under section 6 of the FHAA, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of--(A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter."[2] Fair Housing Amendments Act of 1988, 42 U.S.C. § 3604(f)(1) (2012). Section 3604(f)(1) gives handicapped persons a right of action against municipal

---

[2] The Defendants do not presently contest that the persons who will reside in the Plaintiffs' home are handicapped or that the Plaintiffs are aggrieved persons within the meaning of the statute.

entities for land-use regulations that discriminate against them. See, e.g., Oxford House, Inc. v. City of Baton Rouge, La., 932 F. Supp. 2d 683, 689 (M.D. La. 2013).  FHAA discrimination claims are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Scruggs v. Marshall Hous. Auth., 232 F.3d 210 (5th Cir. 2000) (unpublished) (per curiam).  A plaintiff can prove its prima facie case of discrimination under § 3604 through three different theories: intentional discrimination, disparate impact, or a failure to make a reasonable accommodation. City of Baton Rouge, 932 F. Supp. 2d at 689.  To establish a prima facie case of discrimination under the FHAA based on the failure to make a reasonable accommodation, the plaintiff must, inter alia, actually request an accommodation from the defendant(s).  See Taylor v. Harbour Pointe Homeowners Ass'n, 690 F.3d 44, 49 (2d Cir. 2012).  A court determines whether a defendant intentionally discriminated by evaluating the five intent factors described by the Supreme Court in Village of Arlington Heights v. Metropolitan Housing Developm Corp., 429 U.S. 252 (1977). Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par., 648 F. Supp. 2d 805, 809 (E.D. La. 2009) (citing Overton v. City of Austin, 871 F.2d 529, 540 (5th Cir. 1989)).

Land-use regulations that discriminate against disabled persons are also actionable under the ADA. See City of Middletown, 294 F.3d at 45-46.  The ADA provides in pertinent part that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

Americans with Disabilities Act of 1990, 42 U.S.C. § 12132.[3]  A plaintiff may sue under the ADA for discriminatory zoning policies.  See City of Middletown, 294 F.3d at 46.  "Plaintiffs who allege violations under the ADA . . . may proceed under any or all of three theories: disparate treatment, disparate impact, and failure to make reasonable accommodation."  Id. at 48.

 C. Ripeness

Ripeness is a condition for a justiciable claim.  See Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 732 (1998).  Although the doctrine is more frequently applied when a party seeks preenforcement review of a statue or regulation, see Erwin Chemerinsky, Federal Jurisdiction § 2.4, at 119-20 (6th ed. 2012), it also applies when a party challenges a local land-use decision that is enforceable but not yet final, i.e., the decision may be reversed through the local government's internal appellate or variance procedures, see Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 744 (1997).  In this context, a claim is not ripe unless the substantive law invoked by the plaintiff to challenge the land-use decision entitles him to relief irrespective of whether the decision is later reversed.  See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 190-92 (1985) (holding that a takings claim is not ripe until the land-use decision is final because a plaintiff cannot vindicate a takings claim as long as the extent of the taking remains subject to change); Sunrise Detox V, LLC v. City of White Plains, 769 F.3d 118, 122 (2d Cir. 2014) (noting that the Second Circuit has "extended the final-decision

---

[3] Although the ADA uses the term "disability" and the FHAA uses the term "handicap," these two words are functionally synonymous.  See Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 38 n.8 (2d Cir. 2015).

requirement [under Williamson] to zoning challenges based on substantive due process; First Amendment rights of assembly and free exercise; and the Religious Land Use and Institutional Persons Act of 2000" (citations omitted)); Groome Res. Ltd., L.L.C. v. Parish of Jefferson, 234 F.3d 192, 199 & n.6 (5th Cir. 2000) (finding that a reasonable accommodation claim under the FHAA is not subject to final-decision requirement of Williamson and is instead ripe once an accommodation is denied). Accordingly, the ripeness of the Plaintiffs' discrimination claims turns on when discriminatory conduct becomes actionable under those theories.

### i. *The Ripeness of the Plaintiffs' Reasonable Accommodation Claims*

The Court first analyzes whether the Plaintiffs' reasonable accommodation claims are ripe. In the Fifth Circuit, a reasonable accommodation claim is not subject to the final-decision requirement and is instead ripe "when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings." Groome, 234 F.3d at 199 & n.6 (quoting Bryant Woods Inn, Inc. v. Howard County, Md., 124 F.3d 597, 599, 602 (4th Cir. 1997)); Avalon Residential Care Homes, Inc. v. City of Dallas, No. 3:11-CV-1239-D, 2011 WL 4359940, at *1, *5 (N.D. Tex. Sept. 19, 2011). Although the Fifth Circuit has not defined a first denial for the purposes of this rule, courts generally hold that a reasonable accommodation claim is not ripe until the plaintiff requests an accommodation through available variance or special use procedures and the defendant denies that request for a variance. See Groome, 234 F.3d at 196, 199 (reasonable accommodation claim ripe when plaintiff sought variance and parish defendant constructively denied the request by failing to act on it); Bryant Woods, 124 F.3d at 599,

602 (reasonable accommodation claim ripe when plaintiff sought and was denied variance, even though denial was appealable); Avalon, 2011 WL 4359940, at *1, *5 (reasonable accommodation claim ripe when city defendant denied emailed request from the plaintiff for the city not to enforce ordinance and no other variance procedures were apparently available); United States v. Village of Palatine, Illinois, 37 F.3d 1230, 1232-33 (7th Cir. 1994) (reasonable accommodation claim not ripe when plaintiff requested an accommodation without utilizing available variance procedure); Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains, 284 F.3d 442, 452 n.5 (3d Cir. 2002) (same); Oxford House, Inc. v. City of Virginia Beach, Va., 825 F. Supp. 1251, 1255 (E.D. Va. 1993) (same); Marriott Senior Living Servs., Inc. v. Springfield Township, 78 F. Supp. 2d 376, 385–86 (E.D. Pa. 1999) ("While strict compliance with every local ordinance or regulation is not required … the applicant must show that under the circumstances it has afforded the appropriate local authority a reasonable opportunity to consider the project in some final form."). But see Sunrise Detox, 769 F.3d at 122-23 (2d Cir. 2014) (reasonable accommodation claim not ripe when plaintiff sought and was denied variance because denial was appealable). The failure of the Plaintiffs to seek an accommodation by applying to the Board of Appeals for a variance therefore means that their reasonable accommodation claims under the FHAA and ADA are not ripe.

The Plaintiffs argue that the cases above are distinguishable from this matter because there, the applications for variances were always compelled by the fact that the plaintiffs' proposed uses of the building facially violated applicable land-use regulations, whereas here, the Plaintiffs' proposed use complies with the Ordinance. See, e.g.,

Groome, 234 F.3d at 196 (home for disabled persons required variance because area zoned for single-family homes and family defined as those related by blood or marriage); Record Document 9-5, p. 12 (Ordinance defines family as those "living together as a single housekeeping unit"). This distinction, while true, only reflects the reality that this case does not easily fit a reasonable accommodation theory of discrimination. It is difficult to assert a claim that you were denied a reasonable accommodation when a central theme of your case is that you do not need any accommodation.[4] Thus, while requiring the Plaintiffs to seek a variance may be actionable under another theory of discrimination, the fact remains that the Plaintiffs do not cite, and the Court cannot locate, a single case holding that such a requirement gives rise to a ripe reasonable accommodation claim under the FHAA or ADA. The Plaintiffs' reasonable accommodation claims are therefore premature and must be dismissed.

The Plaintiffs also argue that their claims are ripe because an application for a variance through the Board of Appeals would be futile given the Defendants' open hostility to the Plaintiffs and the Plaintiffs' plan to build a home for disabled persons. If a request for an accommodation would be futile or foredoomed, then the plaintiff is not required to make such a request before asserting a reasonable accommodation claim. City of Baton Rouge, 932 F. Supp. 2d at 691 (citing Village of Palatine, 37 F.3d at 1234). Futility can be established when members of the body empowered to approve or deny the request for accommodation have indicated that approval is unlikely. See New Life Outreach Ministry

---

[4] This observation should not be construed as indicating whether the Plaintiffs' have failed to state a claim that is entitled to relief under Federal Rule of Civil Procedure 12(b)(6), as neither party has briefed this issue to the Court.

Inc. v. Polk County, No. 8:06-CV-1547-T-27MAP, 2007 WL 2330854, at *2 (M.D. Fla. Aug. 14, 2007) (holding that variance would be futile, and claim was thus ripe, where member of zoning commission stated "[i]f [the plaintiff] came to me today, or our board today, and were applying for a new conditional use . . . I would deny them"); Moorestown, 996 F. Supp. at 415, 426 (holding the same where "Secretary to the Planning Board, and the Zoning Officer of the Township" testified that variance would be "extremely unlikely"). By itself, public opposition to the plaintiff's plans does not establish futility. See Sunshine Detox, 769 F.3d at 120, 124. The Plaintiffs contend that a variance would be futile in light of opposition from neighbors, the stop-work order, and Anderson's determination to disqualify Barron Builders from working in Haughton. The Defendants refute this characterization, pointing to the Town's 1991 approval of a variance for Evergreen to operate a home for disabled persons as proof that an application for a variance would not be futile. Although the conduct of the neighbors and Anderson does indicate that they would likely oppose a variance if the Plaintiffs sought one (whether for discriminatory reasons or not), there is no evidence in the record that either the neighbors or Anderson are members of the body authorized to grant a variance, i.e., the Board of Appeals. See New Life Outreach, 2007 WL 2330854, at *2; Moorestown, 996 F. Supp. at 415, 426. The 1991 variance also casts doubt on the conclusion that an application for a variance would be "foredoomed." See Village of Palatine, 37 F.3d at 1234. Thus, on balance, the Court finds that the Plaintiffs have failed to meet their burden of showing that applying for a variance from the Zoning Board would be futile.

    ii. *The Ripeness of the Plaintiffs' Intentional Discrimination Claims*

The Court next examines whether the Plaintiffs' intentional discrimination claims are ripe. "While 'most [FHAA] reasonable accommodations claims must first be presented to local land use boards,' claims of discriminatory intent or discriminatory impact are ripe even where approvals have not been sought." Torres v. Franklin Twp., No. CIV.A. 09-6282, 2011 WL 6779596, at *5 (D.N.J. Dec. 22, 2011) (quoting Lapid–Laurel, 284 F.3d at 452 n.5); accord Village of Palatine, 37 F.3d at 1233-34 (noting that while reasonable accommodation claim under FHAA was not ripe, "if plaintiff's claim were of discriminatory intent, rather than failure to make a reasonable accommodation, this claim might well be presently ripe even though [the plaintiff] has not sought a special use approval"); United States v. City of New Orleans, No. CIV.A. 12-2011, 2012 WL 6085081, at *3, *5 (E.D. La. Dec. 6, 2012) (holding that intentional discrimination claim under FHAA ripe even though city defendant ultimately granted the variance); Virginia Beach, 825 F. Supp. at 1262 & n.4 (holding that intentional discrimination claim under FHAA was ripe even though reasonable accommodation claim was not); cf. Groome, 234 F.3d 199 & n.6. But see Sunrise Detox, 769 F.3d at 122-23. Here, the essence of the Plaintiffs' intentional discrimination claim is that the Defendants issued the stop-work order and insisted that the Plaintiffs apply for a variance not because the Plaintiffs' proposed use of the home violates the ordinance, but because disabled persons would reside there. Assuming this conduct is actionable under an intentional discrimination theory, it would remain so even if the Plaintiffs were to later receive a variance because it is the very act of requiring a variance that would be discriminatory. The Plaintiffs have therefore stated a ripe claim of intentional discrimination under the FHAA and ADA. See Groome, 234 F.3d at 199; City of New

Orleans, 2012 WL 6085081, at *5.

The Defendants argue that Sunrise Detox V, LLC v. City of White Plains instructs otherwise. 769 F.3d 118. There, the Second Circuit held that where the plaintiff sought and was denied a special permit to operate a facility for disabled persons, neither his intentional discrimination claim nor his reasonable accommodation claim were ripe because the plaintiff could have appealed the denial of the special permit to another zoning authority. Id. at 119-20, 122-23. The problem with inviting instruction from Sunrise Detox is that it conflicts with precedent set by the Fifth Circuit in Groome. In holding that the denial of a special permit does not give rise to a ripe claim of discrimination under the FHAA as long as the plaintiff may appeal that denial through subsequent proceedings, see id. at 123, Sunrise Detox conflicts with the Fifth Circuit's pronouncements in Groome that "a violation occurs [under the FHAA] when the disabled resident is first denied a reasonable accommodation, *irrespective of the remedies granted in subsequent proceedings*," see Groome, 234 F.3d at 199 (citation omitted) (emphasis added). More generally, where the Second Circuit in Sunrise Detox held that FHAA discrimination claims challenging a land-use decision are subject to the "final-decision" requirement of Williamson, see Sunrise Detox, 769 F.3d at 122-23 (citing Williamson, 473 U.S. at 186-191), the Fifth Circuit in Groome determined that the same claims are not subject to the final-decision requirement, instead finding that "ripeness in the Fair Housing Act context must be distinguished from ripeness cases involving unconstitutional takings or other

zoning issues," see Groome, 234 F.3d at 199 & n.6 (citations omitted).[5] In this Court, this conflict resolves in favor of Groome. Sunshine Detox therefore does not upset the Court's holding that the Plaintiffs' intentional discrimination claims are ripe.

Finally, the Defendants' concern that letting the Plaintiffs' discrimination claims proceed would prevent the development of an adequate factual record is unfounded. By dismissing the Plaintiffs' reasonable accommodation claims, the Court has limited the scope of its inquiry into the Defendants' conduct. To determine whether the Plaintiffs should prevail on their intentional discrimination claims, the Court will no longer need to delve into the merits of whether the Plaintiffs are entitled to a variance. Instead, it will be required to determine whether the Defendants rejected the Plaintiffs' application for a permit because disabled persons would reside at the home. The facts needed to resolve that determination, including whether there were nondiscriminatory reasons to reject the application, are already ascertainable and need no further development.

## IV.  Conclusion

For the reasons assigned above:

**IT IS ORDERED** that the Defendants' motion for partial dismissal, Record Document 11, is hereby **DENIED** insofar as it seeks to dismiss the Plaintiffs' intentional discrimination claims and is **GRANTED** insofar as it seeks to dismiss the Plaintiffs' reasonable accommodation claims. The Plaintiffs' reasonable accommodation claims under

---

[5] The holding in Sunshine Detox was also limited to injunctive relief. 769 F.3d at 123. The Second Circuit expressly reserved for another day the question of whether a non-final zoning decision gives rise to a ripe claim for damages under the FHAA. Id.

the FHAA and ADA are therefore **DISMISSED without prejudice**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 2nd day of August, 2016.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE